Filed 12/8/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

     Plaintiff and Appellant,

v.

POTTER HANDY, LLP, et al.,

     Defendants and Respondents.

A166490

(City & County of San Francisco
Super. Ct. No. CGC-22-599079)

     The law firm Potter Handy, LLP and several of its attorneys (collectively, Potter) have filed countless complaints in federal courts in California alleging violation of the Americans with Disabilities Act of 1990 (ADA). (42 U.S.C. § 12101, et seq.) The district attorneys of Los Angeles and San Francisco (the People) allege that these ADA complaints contain standing allegations Potter knows to be false, that Potter files the complaints as part of a shakedown scheme to extract coerced settlements from small business owners in California, and that this conduct constitutes an "unlawful" business practice under our state's unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.) As predicate for its charge of unlawfulness, the People rely on Business and Professions Code section 6128, subdivision (a) (§ 6128(a)), which makes it a misdemeanor for an attorney to engage in deceit or collusion with intent to deceive the court or a party, and on two Rules of Professional Conduct governing lawyers.

The question before this court is whether the People's UCL claim can survive a demurrer brought on the ground that the litigation privilege immunizes Potter's alleged conduct in this case. (Civ. Code, § 47, subd. (b) (§ 47(b)).) Communications made as part of a judicial proceeding are generally privileged, so as to afford litigants " 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) But this broad principle has exceptions, and the parties agree that, had the People filed criminal charges directly under section 6128(a), that case could have proceeded. Courts have long recognized that the privilege must give way where a statute like section 6128(a) "is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege." (*Action Apartment*, at p. 1246.) We conclude this exception does not extend to a UCL claim predicated on violation of section 6128(a) and on Rules of Professional Conduct. Carving out an exception to the litigation privilege for the People's UCL claim would not be proper because the Legislature's prescribed remedies—prosecution directly under section 6128(a) and State Bar disciplinary proceedings—remain viable.

The trial court having properly sustained the demurrer without leave to amend, we affirm.

**BACKGROUND**

In April 2022, the People filed a complaint against Potter, and we take the material facts alleged in the complaint as true for purposes of demurrer. (*San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 276–277 (*Webcor*).)

According to the complaint, every year Potter files "thousands" of boilerplate lawsuits alleging ADA violations, which falsely assert that Potter's clients have standing to maintain their cases in federal court. These cases also include state-law claims for violating California's parallel disability law, the Unruh Civil Rights Act, which authorizes recovery of damages not available under the ADA. (See Civ. Code, § 52.) Potter files these lawsuits in federal court in order to circumvent procedural reforms enacted by the California Legislature to curb abusive claims of this type. (See e.g., Code Civ. Proc., §§ 425.50 & 425.55.) Potter's lawsuits are filed on behalf of a few "[s]erial" plaintiffs against small California businesses with limited resources, especially businesses owned by immigrants or individuals with limited English, and Potter pays "little regard to whether those businesses actually violate the ADA." In order to invoke federal jurisdiction, they intentionally include false standing allegations, including "that the Serial Filer personally encountered a barrier at the business in question, was deterred or prevented from accessing the business because of it, and intends to return to the business after the violation is cured." (Boldface italics omitted.) With these false allegations, Potter "uses ADA/Unruh lawsuits to shake down hundreds or even thousands of small businesses to pay it cash settlements."

The complaint incorporates these factual allegations into a single cause of action for violating the UCL by engaging in an "unlawful" business practice. (Bus. & Prof. Code, § 17200.) According to this pleaded claim, Potter's knowing assertion and adoption of false standing allegations violates three California laws: (1) section 6128(a), the misdemeanor statute aimed at attorney deceit of the court or a party; (2) Rule 3.1 of the Rules of Professional Conduct (Rule 3.1), which prohibits attorneys from pursuing

3

non-meritorious claims for the purpose of harassing or maliciously injuring any person; and (3) Rule 3.3 of the Rules of Professional Conduct (Rule 3.3), which imposes an affirmative duty on attorneys to correct false statements and to rectify fraudulent conduct committed during litigation to the extent permitted by law. In their prayer for relief, the People seek an injunction restraining the allegedly unlawful business practice; an order requiring Potter to "restore" all money and property acquired through its unlawful practice to "every person in interest"; and civil penalties in the amount of $2,500 for each violation of the UCL proven.

In June 2022, Potter demurred to the complaint on multiple grounds. Pertinent here, Potter argued that the People's UCL claim is barred by California's litigation privilege. (§ 47(b).)[1] In opposing the demurrer, the People argued that the litigation privilege does not bar this action because their UCL claim is predicated on violations of a regulatory statute or rule that is itself exempt from the privilege. (Citing *Action Apartment*, *supra*, 41 Cal.4th at p. 1246; *Zhang v. Superior Court* (2013) 57 Cal.4th 364 (*Zhang*); *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267 (*Persolve*).)

In August 2022, the trial court sustained Potter's demurrer without leave to amend. The court found that the People's UCL claim is based on conduct that falls squarely within the broad privilege, and that no exception

---

[1] As additional grounds for the demurrer, Potter argued that (1) this action is barred by collateral estoppel because the district attorney of Riverside County filed essentially the same claim against a different law firm, which was dismissed on demurrer pursuant to a finding that the litigation privilege applied (citing *People v. Rutherford* (Dec 23, 2020, E073700) [nonpub. opn.]); (2) Potter is immune from liability under the *Noerr-Pennington* doctrine (citing e.g. *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 964 (*Gallegos*)); and (3) the UCL claim is preempted by the ADA. The trial court rejected these contentions and those aspects of its ruling are not challenged on appeal.

to the privilege applies.  Following entry of judgment in favor of Potter, the People filed this timely appeal.[2]

## DISCUSSION

" 'We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.' " (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1172–1173.)  When a demurrer is sustained without leave to amend, the appellant has the burden to prove there is a reasonable possibility the defect can be cured.  (*Webcor, supra*, 62 Cal.App.5th at p. 276–277.)  In this case, the People contend the trial court erred in concluding the litigation privilege bars their UCL claim against Potter, but they do not contend they can state a cause of action if the privilege does apply.  Thus, we independently review the trial court's dispositive findings—that conduct alleged in the complaint is protected by the litigation privilege, and that no exception to the privilege has been established.

---

[2] Following the trial court, we grant certain requests for judicial notice filed by both parties, taking notice of (1) unpublished decisions in the *Rutherford* case, and (2) documents relating to two federal cases filed by Potter and dismissed for lack of standing under the ADA.  But we deny the People's request for judicial notice of additional material relating to ADA cases Potter filed in federal court.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)  Contrary to the People's argument in support of this request, their desire to use the UCL to put a "spotlight" on Potter's allegedly abusive litigation tactics is not relevant to our resolution of this appeal.  We note also that the People are supported in their appeal by amici curiae the Chamber of Commerce of the United States and the California Chamber of Commerce.  Amici curiae express concern about abusive ADA litigation, but they fail to address whether the litigation privilege applies to the UCL cause of action at issue in this appeal.

## I. The Litigation Privilege Reaches Potter's Conduct

The litigation privilege is codified in section 47(b), which provides that a " 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." Where it applies, "[t]his privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment*, *supra*, 41 Cal.4th at p. 1241.)

Courts give the litigation privilege a "broad interpretation" in order to further its principle purpose of protecting " 'access to the courts without fear of . . . derivative tort actions.' " (*Action Apartment*, *supra*, 41 Cal.4th at p. 1241.) Our Supreme Court has "emphasized the importance of the litigation privilege's absolute protection of access to the courts, while recognizing that this absolute protection has its costs." (*Id.* at p. 1244.) " '[It] is desirable to create an absolute privilege . . . not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with [subsequent derivative] actions.' " (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214 (*Silberg*).) " ' "[W]hen there is a good faith intention to bring a suit, even malicious publications 'are protected as part of the price paid for affording litigants the utmost freedom of access to the courts.' " ' [Citation.] Additionally, 'in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial

6

the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' " (*Action Apartment*, at p. 1244.)

The litigation privilege originated as a defense to liability for defamation, but it is now recognized as much broader in scope. (*Ribas v. Clark* (1985) 38 Cal.3d 355, 364; *Action Apartment, supra*, 41 Cal.4th at pp. 1241–1242.) Our Supreme Court first extended the litigation privilege to various torts other than defamation (*ibid.*), and then to certain statutory causes of action. For example, in *Ribas* the litigation privilege was found to bar recovery for damages incurred as a result of a witness's testimony describing a conversation she had unlawfully overheard. (*Ribas*, at pp. 364–365.) The witness had eavesdropped in violation of a statute that both criminalized and created a civil cause of action for certain invasions of privacy. (*Id.* at pp. 358–359, 364–365.) Invoking "the vital public policy" at the heart of the litigation privilege, the Court concluded that the purpose of the privilege is "no less relevant to" a statutory cause of action than to a common law tort, and thus it barred an action brought under the statute. (*Id.* at p. 364.) " 'The resulting lack of any really effective civil remedy against perjurers' " or eavesdroppers " 'is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.' " (*Id.* at p. 365.)

Applying these principles here—and putting aside for the moment the issue of an uncodified exception to the privilege—we conclude that the People's UCL action against Potter is barred by the litigation privilege. In the complaint, the conduct alleged to violate the UCL is the filing of ADA/Unruh lawsuits in federal court based on false standing allegations, and

the use of those lawsuits to coerce settlements.  Both types of conduct constitute communications falling within the broad reach of the privilege and its absolute protection of access to the courts.  (See e.g., *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770–771 ["Pleadings and process in a case are generally viewed as privileged communications"].)  Thus, we affirm the trial court's initial finding that "[o]n its face the privilege of [section] 47 bars this action."

The People do not dispute this point but contend that their case against Potter can be prosecuted under an exception to the privilege, so to that topic we next turn.

## II. An Exception to the Privilege Is Proper Only as Necessary to Avoid Irreconcilable Conflict With Another Statute, Not Here

The broad language of section 47(b) would, if applied without exception, render ineffectual a variety of statutes that regulate conduct occurring in legal proceedings.  Courts have accordingly limited the privilege's reach where its application is inconsistent with another, more specific statute.  (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.)  For example, "[t]he crimes of perjury and subornation of perjury would be almost without meaning if statements made during the course of litigation were protected from prosecution for perjury by the litigation privilege."  (*Ibid.*, fns. omitted.)  Similarly, the crime defined in section 6128 "evince[s] a legislative intent that certain attorney conduct not be protected from prosecution by the litigation privilege."  (*Action Apartment,* at p. 1246.)  Criminal sanctions thus remain available for perjury, the suborning of perjury, and an attorney's deceit of the court or a party.  (Ibid.)  But this is *not* a reason also to allow civil damages or penalties for the same conduct.  (See, e.g., *Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1300 [litigation privilege has long barred civil claims based on subornation of perjury].)

Indeed, courts have cited the availability of criminal and State Bar disciplinary sanctions as a reason *not* to exempt certain conduct from the reach of the litigation privilege. (See, e.g., *Silberg*, *supra*, 50 Cal.3d at pp. 218–219; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 371–372.)

This principle is well illustrated in *Rubin v. Green* (1993) 4 Cal.4th 1187, 1193 (*Rubin*), a case concerning attorney misconduct amounting to the crime of solicitation. (*Id.* at pp. 1190, 1196.) In *Rubin*, the owner of a mobile home park filed a complaint against a law firm, asserting several tort claims and seeking damages and injunctive relief based on allegations that the firm was engaged in a pattern of soliciting residents of mobile home parks to commence frivolous litigation against park owners. (*Id.* at pp. 1191–1192.) The case was properly dismissed on demurrer because the conduct alleged in the complaint was protected by the litigation privilege, our Supreme Court held, notwithstanding the criminal prohibition on attorneys soliciting business through an agent. (*Id.* at p. 1193.) Whether or not the defendants' acts of discussing park conditions and the possibility of being retained to sue the park owner, and then filing pleadings in the lawsuit, amounted to wrongful attorney solicitation, "they were communicative in their essential nature and therefore within the privilege of section 47(b)." ( *Rubin*, at p. 1196.) The alleged torts were distinct from the tort of malicious prosecution, which is the only common law tort action to which the privilege does not apply.[3] (*Id.* at pp. 1193–1194; see also *Silberg*, *supra*, 50 Cal.3d at

---

[3] "Malicious prosecution actions are permitted because '[t]he policy of encouraging free access to the courts . . . is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied.' " (*Silberg*, *supra*, 50 Cal.3d at p. 216.) The alternative—extending the litigation

pp. 215–216.) And other avenues remained for policing the conduct alleged in the complaint. The Court observed that these alternatives included criminal prosecution for the misdemeanor offense defined in Business & Professions Code sections 6152–6153, State Bar discipline for violation of an applicable rule of professional conduct governing lawyers, and the possible recovery of attorney fees and costs as the prevailing party in the underlying litigation, all of which meant the utility of a derivative civil complaint "such as this one is marginal." (*Rubin*, at pp. 1198.)

Having concluded that the litigation privilege barred tort claims for damages, the *Rubin* Court went on to consider whether the park owner was entitled to pursue injunctive and restitutionary relief by way of the UCL. (*Rubin*, *supra*, 4 Cal.4th at p. 1200.) The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) "By proscribing 'any unlawful' business act or practice [citation], the UCL ' "borrows" ' rules set out in other laws and makes violations of those rules independently actionable." (*Zhang*, *supra*, 57 Cal.4th at p. 370.) A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554.) Although its reach is broad, the UCL " ' "is not an all-purpose substitute for a tort or contract action." ' " (*Zhang*, at p. 371.) "Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150.)

---

privilege to a cause of action for malicious prosecution—would eviscerate this common-law tort action.

10

Parties may not use the UCL to plead around an absolute barrier to relief by relabeling a cause of action as a UCL claim. (*Zhang*, *supra*, 57 Cal.4th at p. 377.) Accordingly, the UCL "does not permit an action that another statute expressly precludes." (*Cel-Tech Communications*, *Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184 (*Cel-Tech*).) "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (*Id.* at p. 182.)

Consistent with these now-settled principles, the *Rubin* Court held that the plaintiff in that case could "not avoid the bar of section 47(b) by pleading his claim as one for injunctive relief under the unfair competition statute." (*Rubin*, *supra*, 4 Cal.4th at p. 1193; see also pp. 1200–1204.) In reaching this conclusion the Court recognized that the coverage of the UCL is "indeed sweeping" (*id.* at p. 1200), but reasoned that "[i]f the policies underlying section 47(b) are sufficiently strong to support an absolute privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b)." (*Id.* at p. 1203.)

The parallels between *Rubin* and the case before us are patent. As in *Rubin*, the conduct alleged in this case relates to the filing and prosecution of antecedent cases, but no tort of malicious prosecution is alleged. The conduct is said to violate a misdemeanor provision of the Business & Professions Code and one or more of the State Bar's Rules of Professional Conduct, but the case is not proceeding directly under these provisions, and the availability of these alternate remedies is *not* a reason to exempt the conduct from the reach of

11

the litigation privilege. The complaint frames a cause of action under the UCL, and this " 'new label' " may not be employed to circumvent application of the litigation privilege. (*Rubin*, *supra*, 4 Cal.4th at p. 1202, italics omitted.)

The People attempt to distinguish *Rubin* by relying on language in that decision suggesting that the litigation privilege might not apply if the party filing a UCL action was not a party to the prior litigation, but was instead a government entity acting on behalf of the public. (Citing *Rubin*, *supra*, 4 Cal.4th at pp. 1198, 1203-1204.) However, our Supreme Court has since made clear that there is no "broad exception" to the litigation privilege for parties "who did not participate in the underlying litigation." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1247.) Such an exception "would be antithetical to the privilege's purposes," since "[d]erivative litigation brought by parties who did not participate in the underlying litigation" would just as readily "pose an external threat of liability that would deter potential litigants, witnesses, and others from participating in judicial proceedings." (*Id*. at pp. 1247–1248.)

In *Action Apartment*, the Court delineated criteria for determining whether an exception to the litigation privilege can be found. *Action Apartment* was a class action lawsuit challenging provisions in a city's rent ordinance that prohibited a landlord from maliciously serving a notice of eviction or bringing an eviction action without a reasonable factual or legal basis. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1237.) The *Action Apartment* Court found that the litigation privilege applied and entirely preempted the provision in the ordinance that penalized bringing an eviction action. (*Ibid*.) In the course of its analysis, the Court expressly rejected the city's contention—based on "dictum" in *Rubin*— that there is an exception to

12

the litigation privilege for civil lawsuits filed by someone who was not a party to the underlying litigation, such as a UCL case brought by "the Attorney General, district attorneys, certain city attorneys," or other members of the public. (*Action Apartment*, at p. 1247.)

The *Action Apartment* Court also clarified that creating exceptions to the litigation privilege is a legislative function. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1247.) For example, while our Supreme Court had previously observed that the privilege does not apply to crimes such as perjury or an attorney's deceit of the court or a party, *Action Apartment* states that no "exception for criminal prosecutions is inherent in the litigation privilege." (*Id*. at p. 1246.) Instead, exceptions to the privilege are recognized "based on irreconcilable conflicts between the privilege and other coequal state laws." (*Id*. at p. 1247.) When another statute "is more specific than the litigation privilege and would be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege," courts recognize an exception to the privilege. This is a straight-forward application of the " 'rule of statutory construction that particular provisions will prevail over general provisions.' " (*Id*. at p. 1246.)

The People home in on an observation in *Action Apartment* that the privilege does not protect an attorney from criminal prosecution under section 6128, arguing that if the privilege does not apply in that context then it should not apply here, where the People use section 6128 as a predicate for their UCL claim. We disagree with this logic, which ignores *Rubin* and the distinction it draws between criminal prosecution for solicitation (not barred) and liability in tort or under the UCL for the same conduct (barred). This logic also ignores that the People elected not to charge Potter with a crime for violating section 6128, but to bring a civil action under the UCL. "The UCL,

13

unlike other statutes that courts have determined were intended by the Legislature to withstand the litigation privilege, is not necessarily 'more specific than the litigation privilege and would [not] be significantly or wholly inoperable if its enforcement were barred when in conflict with the privilege.' " (*Gallegos*, *supra*, 158 Cal.App.4th at p. 962, quoting *Action Apartment*, *supra*, 41 Cal.4th at pp. 1246–1247.) Moreover, contrary to many of the People's contentions in this appeal, the fact that UCL actions brought by government authorities serve important law enforcement functions "does not warrant erosion of the absolute litigation privilege." (*Gallegos*, at p. 963.)

In *Gallegos*, the Humboldt County District Attorney brought an action on behalf of the People, alleging that a lumber company violated the UCL by making fraudulent representations during administrative proceedings conducted pursuant to the California Environmental Quality Act (CEQA). (*Gallegos*, *supra*, 158 Cal.App.4th at pp. 955–956.) The appellate court affirmed that the UCL claim was barred by the litigation privilege. (*Id*. at pp. 957–964.) Applying *Action Apartment* and *Rubin*, the court observed that "given the importance of the privilege's absolute protection of access to official proceedings, . . . litigants, whatever their identity, should not be permitted to plead around the privilege absent clear legislative intent." (*Gallegos*, *at* p. 962.) The court found that the Legislature had not clearly evinced an intention to override the litigation privilege in enforcement actions brought by governmental entities under the UCL. (*Gallegos*, at pp. 961–963.) The People resisted this conclusion by arguing that an intent to override the privilege could be gleaned from CEQA, which contains a "savings clause" preserving the government's power to bring an action under the UCL on behalf of the public to enforce CEQA. (*Gallegos*, at pp. 961, 962.) The *Gallegos* court rejected this argument, explaining that CEQA's savings clause

14

gives governmental entities no new or additional authority, including no "authority to pierce the litigation privilege." (*Gallegos*, at p. 962.)

*Gallegos* reinforces that the litigation privilege applies in the present case. It illustrates that the pertinent inquiry is whether the UCL, as the statute pursuant to which the claim is brought, is fatally undermined by application of the privilege. (*Gallegos*, *supra*, 158 Cal.App.4th at p. 962.) Here, the People seek an injunction and civil penalties against Potter for violating the UCL, a statute that has not been shown to evince a legislative intent to carve out an exception to the litigation privilege. The fact that the UCL claim borrows section 6128 as its predicate for alleging unlawfulness does not dictate a different outcome. Section 6128 is an expression of the Legislature's intent that the litigation privilege not bar criminal prosecution against an attorney for engaging in deceit or collusion with the intent to deceive the court or another party. Section 6128 says nothing about enforcement actions filed under the UCL, a materially different statute that is not irreconcilable with the litigation privilege.

## III. The People Cannot Avoid the Litigation Privilege Based on the Predicate for a UCL Claim

The People contend that, because they allege a cause of action under the " 'unlawful' " conduct prong of the UCL, the pertinent inquiry is not whether applying the litigation privilege fatally undermines the UCL, but whether the privilege can be reconciled with the predicate law(s) upon which the UCL claim is based. From the fact that the litigation privilege does not bar criminal prosecution under section 6128 or State Bar disciplinary proceedings under Rules 3.1 and 3.3, the People would have us conclude it cannot bar a UCL claim predicated on these authorities. The People find some support for this argument in *Persolve*, *supra*, 218 Cal.App.4th 1267, a case we consider an outlier.

15

In *Persolve*, the district attorney of Kern County filed a UCL action against a debt collection company and its attorneys, alleging they violated the UCL by engaging in debt collection practices proscribed by California's Fair Debt Collection Practices Act (California Act) (Civ. Code, § 1788 et seq.), and the Federal Fair Debt Collections Act (Federal Act) (15 U.S.C. § 1692 et seq.). (*Persolve*, *supra*, 218 Cal.App.4th at pp. 1270–1271.) After the trial court sustained a demurrer to the complaint, finding the litigation privilege barred the claims, the appellate court reversed. (*Persolve*, at p. 1271.) The *Persolve* court acknowledged the privilege "would generally apply" because the complaint was based on communications relating to anticipated litigation, but it allowed the claim to proceed as an exception to the privilege for more specific, conflicting statutes. (*Id.* at pp. 1274–1275.) To reach this conclusion, the court made two related findings.

First, the *Persolve* court found that an exception to the litigation privilege applies to cases brought under the California Act or the Federal Act, reasoning that the exception had been recognized in an earlier decision holding a debt collector liable for violating the California Act. (*Persolve*, *supra*, 218 Cal.App.4th at p. 1275, citing *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340 (*Komarova*).) *Komarova* held that claims brought directly under the California Act are exempted from the litigation privilege because the alternative would render the California Act " 'significantly inoperable.' " (*Komarova*, at p. 340.) But *Komarova* also held that the privilege barred a related emotional distress claim against the debt collector, as this was "the very sort of derivative suit the privilege is meant to preclude." (*Id.* at p. 343.) Focusing on the first of these holdings, the *Persolve* court purported to adopt the reasoning of *Komarova* and find it equally applicable to the Federal Act.

In the second part of its analysis, the *Persolve* court extended this reasoning to a UCL claim. It concluded that the exception to the privilege found to apply in *Komarova* also applied to a UCL claim predicated on the California and Federal Acts. (*Persolve*, *supra*, 218 Cal.App.4th at p. 1276.) The court acknowledged that "certain [UCL] actions are within the scope of the litigation privilege," but reasoned that because the California and Federal Acts are more specific than the litigation privilege and cannot be reconciled with it, UCL claims based on these statutes are likewise exempt from the privilege. (*Persolve*, at p. 1276.) More broadly, the *Persolve* court opined that whenever "the 'borrowed' statute is more specific that the litigation privilege and the two are irreconcilable, unfair competition law claims based on conduct specifically prohibited by the borrowed statute are excepted from the litigation privilege." (*Ibid.*)

In our view, *Persolve* diverges from controlling authority in articulating this test. *Persolve* summarizes *Rubin* but does not distinguish it. (*Persolve*, *supra*, 218 Cal.App.4th at p. 1276.) And to the extent *Persolve*'s description of *Rubin* suggests a grounds for distinguishing it—that *Rubin* was "a retaliatory suit" brought against attorneys for a former litigation adversary (*ibid.*), whereas *Persolve* was brought by a public prosecutor—that distinction has lost its persuasive power after *Action Apartment*. (See *Action Apartment*, *supra*, 41 Cal.4th at pp. 1247–1248 [rejecting contention that litigation privilege does not apply when prosecutor files a UCL case, or when plaintiff was not a party to prior litigation].) The *Persolve* court fails to address the issue *Action Apartment* identifies as dispositive: whether the Legislature evinced an intent to carve out an exception to the statutory privilege for the UCL claim in that case. (Compare *Action Apartment* at pp. 1246–1247 with *Persolve* at pp. 1275–1277.) Instead, the *Persolve* court immediately shifts

17

focus to the borrowed statute, and assumes that because an exception to the privilege applies to a cause of action for violating the borrowed statute, a UCL claim could also be prosecuted under the exception. (*Ibid*.) But if this were so, *Rubin* would have turned out differently. The UCL claim in *Rubin* was predicated on alleged violations of the Business & Professions Code that remained punishable as misdemeanors; yet our Supreme Court determined that the litigation privilege barred that UCL claim just as it barred other derivative civil causes of action. (*Rubin, supra*, 4 Cal.4th at pp. 1196–1198, 1200–1203.)

Although we disagree with *Persolve*'s approach,[4] we do not necessarily disagree with its ultimate holding. We cannot dismiss the possibility that a borrowed statute might contain relevant indicia that the litigation privilege should not apply in a derivative UCL action. Perhaps *Persolve* can be explained on this basis, since the court opined that "[a]pplying the privilege to unlawful practices based on specific violations of the California Act and the Federal Act would effectively render the protections afforded by those acts meaningless." (*Persolve, supra*, 218 Cal.App.4th at pp. 1276–1277.) We question that conclusion in light of (1) the holding in *Komarova* allowing a cause of action to proceed directly under the California Act (see *Komarova, supra*, 175 Cal.App.4th at p. 340), and (2) a provision in the Federal Act authorizing the Federal Trade Commission to enforce that statute (see 15 U.S.C. § 1692l). But in any event, this finding distinguishes *Persolve* from

---

[4] Arguing that courts in the First Appellate District have adopted the *Persolve* test, the People misconstrue the cases they cite. (See e.g., *Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1145-1146 [distinguishing *Persolve* without endorsing it]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 [applying litigation privilege in UCL case with no mention of *Persolve*].)

the present case. The borrowed statute here does not evince a legislative intent to override the litigation privilege in a case brought under the UCL, or in any civil case. With section 6128, the Legislature chose a criminal remedy to redress an attorney's deceitful and collusive litigation conduct. That remedy remains available, even as the litigation privilege bars this derivative civil action under the UCL.

## IV. The People's Remaining Arguments Are Unavailing

None of the other arguments the People make leads us to a different conclusion. We review them seriatim.

The People contend that permitting a criminal prosecution against Potter for violating section 6128 while barring a UCL action based on the same exempt predicate is inconsistent with the "absolute" nature of the litigation privilege. (Citing *Silberg*, *supra*, 50 Cal.3d at p. 216–219.) Not so. The issue in this case is whether an exception to the privilege applies, not whether the privilege is absolute when it does apply. By enacting section 6128, the Legislature evinced its intent that attorneys be subject to criminal prosecution for certain deceptive conduct relating to judicial proceedings, regardless of whether such conduct would otherwise be protected by the litigation privilege. But only to the extent set forth in section 6128 do we understand the Legislature to have intended an exception to the litigation privilege. (See *Action Apartment*, *supra*, 41 Cal.4th at p. 1246 [applying canon of statutory construction whereby particular provisions prevail over general provisions with which they conflict].) There is nothing inconsistent about concluding section 6128 does not create an exception to the litigation privilege for actions under the UCL or any other civil law.

19

In their reply brief, the People make the somewhat inconsistent claim that there is no significance to section 6128 being a criminal statute, since a UCL claim can be premised on a violation of a criminal statute. (Citing e.g., *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 320.) But Potter's demurrer was sustained because the unlawful conduct alleged in the complaint is protected by the litigation privilege, not because the People used a criminal law as a predicate for alleging violation of the UCL. And we decline to extend the exception to the privilege that applies in a prosecution under section 6128, not because that would be a criminal case, but because it would be a case brought directly under the statute, whereas this case is not. (See *Komarova*, *supra*, 175 Cal.App.4th at pp. 340, 343 [exception to the litigation privilege applies to claim brought under civil statute but not to tort claim based on similar conduct].) The contours of section 6128 evince a legislative intent to carve out an exception to the privilege for criminal violations, but *not* to create an exception from the privilege for cases seeking to hold a defendant civilly liable for the same conduct.

Also in their reply, the People warn against a " 'heads-I-win-tails-you-lose' paradox" that would make it "impossible ever to bring an unlawfulness prong case." The People correctly observe that where the predicate statute for a UCL unlawfulness claim is barred by the litigation privilege, the UCL claim, too, must fail. (Citing *Cel-Tech*, *supra*, 20 Cal.4th at p. 182.) And where instead the predicate statute is exempt from the privilege, courts have used the predicate statute's survival as a reason not to exempt the UCL claim from the litigation privilege. (See, e.g., *Rubin*, *supra*, 4 Cal.4th at p. 1198.) The point is well taken and suggests that a UCL claim will rarely, if ever, be exempt from the litigation privilege. But we see nothing absurd about this result. "The litigation privilege 'has been referred to as "the backbone to an

20

effective and smoothly operating judicial system." ' " (*Action Apartment*, at pp. 1247–1248.) Courts should not lightly exempt from its application a case where, on its face, the litigation privilege applies.

Taking a different tack, the People contend that we should find an exemption from the litigation privilege for this UCL claim because without the enforcement power of the UCL, section 6128 itself would be rendered "significantly or wholly inoperable." The People reason that prosecuting criminal violations of section 6128 is not practicable because " 'investigative' " tools available in felony cases or in civil litigation are unavailable for a misdemeanor prosecution; venue rules and practicalities would require "dozens or even hundreds of separate . . . cases in different counties"; and then only misdemeanor penalties would be available. We think this account overstates the difficulty of prosecuting a successful case under section 6128, even as it understates the results that could be achieved thereby. For example, we see no reason the People could not combine multiple crimes occurring within a county into a single case and, if successful in its prosecution, obtain restitution for all of the named victims in the case. (Pen. Code, § 954 ["accusatory pleading may charge two or more different offenses connected together in their commission"]; *id.*, § 1202.4, subd. (a) & (f) [court must order restitution in most cases where a victim suffered economic loss as a result of defendant's conduct].) But in any event, the People's argument overlooks that the Legislature chose to make violation of section 6128 a misdemeanor. If the People are dissatisfied with that remedy they can seek legislative reform. Their preference for enforcing a penal law through a UCL action is not proof that the Legislature intended to create an exception to the litigation privilege to afford them this option.

21

In a related argument, the People contend that Rule 3.1 and Rule 3.3 would be rendered significantly inoperable if the litigation privilege bars this action. These rules were designed to govern attorney discipline by the State Bar. (*Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 621.) As the trial court found, nothing in either rule evinces a legislative intent to create an exception to the litigation privilege in a UCL case. On appeal, the People cite *People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 633, which stands for the unexceptional proposition that a UCL claim can be based on violation of a professional conduct rule. *Herrera* has nothing to do with the litigation privilege and does not support the People's contention that an exception to the privilege should be found here. Moreover, the People fail to consider that State Bar disciplinary proceedings are, like criminal prosecutions, examples of remedies "aside from a derivative suit for compensation" that may "help deter injurious publications during litigation." (*Silberg*, *supra*, 50 Cal.3d at p. 218–219.) In other words, the State Bar's authority to enforce the rules of professional conduct is a reason for preserving the privilege in a civil action challenging the same conduct. (*Rubin*, *supra*, 4 Cal.4th at p. 1198.)

Turning to policy considerations, the People argue that applying the litigation privilege in this case would not advance the policy of protecting free access to the courts, since attorneys would still contemplate the threat of criminal sanctions under section 6128. This argument stands in some tension with the People's contention that criminal sanctions are not, as a practical matter, available. But in any event, we are not free to ignore a statutory privilege on the ground that its effects are blunted by an exception to the privilege that the Legislature carved out when it adopted section 6128.

Disputing that policies underlying the privilege should take precedence, the People argue that "this case is hardly the first in which the UCL has been enlisted to prevent unlawful or abusive litigation tactics." The People rely on two UCL cases, neither of which contains any discussion of or reference to the litigation privilege. (*Robinson v. U-Haul Co of California* (2016) 4 Cal.App.5th 304, 309–309 [including covenant not to compete in dealer contracts violated the UCL]; *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 548 [attorney had standing to allege that defendant's unlawful practice of law violated the UCL].)

Equally unavailing is the People's reliance on *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, which held that a complaint against a debt collection company for knowingly filing lawsuits in the wrong jurisdiction stated a valid claim for abuse of process, and that the alleged conduct could be enjoined under Civil Code section 3369. (*Barquis*, at p. 103–104.) Characterizing Civil Code section 3369 as "the predecessor to the current UCL," the People contend that *Barqui*s is "instructive" because it illustrates that the UCL is sufficiently broad to enjoin "unlawful 'misfiling' practices," such as those alleged here. *Barquis* is not instructive because that case does not consider the litigation privilege at all. Indeed, our Supreme Court has since declined to follow *Barquis* and other cases that "upheld actions for abuse of process involving allegedly improper collection practices without addressing the applicability of the litigation privilege." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1059.)

Pointing out that policy concerns cut "both ways," the People argue that "[j]ust as there is a policy in favor of open access to the courts, so too is there a policy against fraudulent or collusive conduct intended to 'deceive the court

23

or any party.' " (Quoting § 6128(a).) We agree and in no way condone the conduct alleged in the People's complaint. But the People's contention does not support their claim of error. The Legislature took account of pertinent public policy concerns by making it a crime for an attorney to engage in fraudulent or collusive conduct intended to deceive the court or any party, not by carving out an exception to the litigation privilege for UCL cases aimed at this conduct.

## DISPOSITION

The judgment is affirmed.


TUCHER, P.J.


WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

Trial Court:      City & County of San Francisco Superior Court

Trial Judge:      Hon. Curtis E.A. Karnow

Counsel:      Brooke Jenkins, District Attorney (San Francisco), Matthew L. McCarthy, Assistant Chief District Attorney, Daniel Amador, Managing Attorney, Gabriel Markoff and Matthew Beltramo, Assistant District Attorneys; George Gascón, District Attorney (Los Angeles), Hoon Chun, Head Deputy District Attorney, and Lesley Klein, Assistant Head Deputy District Attorney, for Plaintiff and Appellant

Eimer Stahl and Robert E. Dunn for the Chamber of Commerce of the United States of America and the California Chamber of Commerce as Amici Curiae on behalf of Plaintiff and Appellant

Callahan & Blaine, David J. Darnell and Gaurav K. Reddy for Defendants and Respondents

*People of the State of California v. Potter Handy LLP, et al.* (A166490)